IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| John B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50137 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John B. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income. The parties have filed cross motions for summary judgment. [37, 42]. As detailed below, Plaintiff's motion for summary judgment [37] is denied and the Commissioner's motion for summary judgment [42] is granted.

## BACKGROUND

A. Procedural History

On December 27, 2012, Plaintiff filed an application for Social Security disability insurance benefits under Title II of the Social Security Act, alleging a disability beginning on December 20, 2012. R. 18. The Commissioner denied his application on June 14, 2013, and upon reconsideration on March 26, 2014. *Id*. Plaintiff filed a written request for a hearing on April 14, 2014. *Id.* On September 29, 2015, a hearing was held by Administrative Law Judge ("ALJ") Cynthia Bretthauer where Plaintiff and a vocational expert appeared and testified. R. 33–65. On November 25, 2015, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 18–28. Plaintiff appealed the decision to the Appeals Council and the Appeals Council denied Plaintiff's request for review. R. 1–6. Plaintiff then sought judicial review of the ALJ's decision.

On August 22, 2017, then-Magistrate Judge Johnston entered a memorandum opinion and order remanding the case on the grounds that the ALJ fail to appropriately address Plaintiff's treatment history. [14]. This opinion advised the ALJ to—on remand—call an impartial medical expert on remand to evaluate Plaintiff's treatment history and to consider the opinion of Plaintiff's treating physician, Howard Weiss M.D., provided after the ALJ's decision. *Id*., at 12. The ALJ followed this instruction. On April 11, 2019, the ALJ held a new hearing where Plaintiff, medical

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

expert Steven Goldstein, M.D., and vocational expert James Radke appeared and testified. R. 426–57.

On April 22, 2019, the ALJ issued a new written decision denying Plaintiff's applications for disability insurance benefits. R. 404–19. Again Plaintiff appealed the decision to the Appeals Council and the Appeals Council denied Plaintiff's request for review. R. 392–95. Plaintiff now seeks judicial review of the ALJ's decision on remand, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [9]. Now before the Court are Plaintiff's motion for summary judgment [37] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [42].

B. The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaged in substantial gainful activity between December 20, 2012, when Plaintiff alleges his disability arose, and June 30, 2015, his date last insured. R. 406. At step two, the ALJ found that during this period Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine; chronic obstructive pulmonary disease ("COPD") with tobacco use disorder; and right shoulder arthralgia. R. 406. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 409.

Before moving to step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work subject to frequently stooping, crawling, crouching, climbing ramps and stairs, and reaching overhead with the right upper extremity; never climbing ladders, ropes, and scaffolds; and avoiding concentrated exposure to dust, odors, fumes, and gases. R. 409. At step four, the ALJ found that Plaintiff could not perform any past relevant work. R. 417. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could perform, including cashier, cafeteria attendant, and mail clerk. R. 419. For these reasons, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from December 20, 2012, to June 30, 2015, the date last insured. *Id.*

**STANDARD OF REVIEW**

The Court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id.* (quoting *Biestek*, 139 S.Ct. at 1153). The Court "will not reweigh the evidence, resolve

debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

The Court is obligated to "review the entire record, but [the Court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The Court's] review is limited also to the ALJ's rationales; [the Court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). Nor can ALJs "succumb to the temptation to play doctor and make their own independent medical findings," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). As "the harmless error standard applies to judicial review of administrative decisions," the Court will not remand a case to the ALJ if "convinced that the ALJ will reach the same result." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). The Court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus*, 994 F.3d at 900 (citations and quotations omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred in her evaluation of Plaintiff's subjective symptom allegations and by failing to give appropriate weight to the opinion of Plaintiff's treating physician, Dr. Weiss. The Court finds neither of these arguments persuasive. As the ALJ's determination that Plaintiff's subjective symptom allegations were not wholly credible stems in part from her crediting of Dr. Goldstein's testimony over that of Dr. Weiss, the Court will address that argument first.

**Opinion Evidence**

Plaintiff contends that the ALJ erred in favoring Dr. Goldstein's reviewing expert opinion over Dr. Weiss's treating physician opinion in determining Plaintiff's RFC. "For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. 404.1527(c)(2)). The treating physician rule can be understood as a two-step process. *Wallace v. Colvin*, 193 F. Supp. 3d 939, 946 (N.D. Ill. 2016). First, the ALJ must determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). A treating physician has "greater familiarity with the claimant's condition and circumstances," such that an ALJ may only discount a treating physician's opinions based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). A treating physician's opinion is "entitled to controlling weight

3

only if it is supported both by medical findings and a consistent record." *Gebauer v. Saul*, 801 F. App'x 404, 409. (7th Cir. 2020).

If the ALJ decides not to give controlling weight to a treating physician's opinion, she must proceed to the second step and evaluate certain checklist factors to determine the amount of weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). These factors include examining relationship; treatment relationship (length and nature of treatment relationship and frequency of examinations, as well as nature and extent of the treatment relationship); supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion within the multifactor framework delineated in the regulation." *Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021) (internal citation omitted).

Dr. Weiss provided his opinion of Plaintiff's restrictions in a physical RFC medical source statement completed on December 30, 2015, more than a month after the ALJ's initial decision. In this opinion, Dr. Weiss listed Plaintiff's diagnoses as cervical radiculopathy, lumbar radiculopathy, and failed neck syndrome and his symptoms as neck pain, arm pain, shoulder pain, and hand numbness. R. 385. He opined that Plaintiff could lift five pounds or less only rarely (for 5% of the day) and that he could never lift ten pounds or more. *Id*. Dr. Weiss indicated that Plaintiff could walk a city block or more without rest or severe pain, but that he had problems with stooping, crouching, and bending and could only reach or handle objects for 1-2% of the day with either hand. R. 385–86. He stated that Plaintiff would need to lie down or recline for about two hours and could not sit or stand and walk for more than an hour during an eight-hour work period. R. 385. He indicated that Plaintiff would need to take five to six unscheduled 20-minute breaks during the day to lie down or sit quietly. *Id*. And that for between 10% and 20% of an eight-work day, Plaintiff's legs should be elevated at a 20-degree angle. *Id*. Dr. Weiss estimated that Plaintiff would be off task for more than 30% of the workday; absent from work for five or more days a month; and unable to complete a full workday for five or more days a month. *Id*. Finally, Dr. Weiss stated that Plaintiff had exhibited his current level of symptoms, impairments, and limitations for 21 years. *Id*.

In her decision, the ALJ gave Dr. Weiss's opinion's little weight finding that "the inconsistencies and disproportionate character of [Dr. Weiss's] assigned limitations materially detract from any weight that the [ALJ] could assign to [his] opinion." R. 416. In summarizing Dr. Weiss's opinion, the ALJ specifically noted that his statement that Plaintiff has exhibit the same level of symptoms, impairments, and limitations for 21 years was "inconsistent with the medium to heavy work that the claimant performed during that time." *Id*. The ALJ also found that the opinion was not supported by Dr. Weiss's own treatment notes and "inconsistent with the more persuasive opinion of" Dr. Goldstein "who testified that Dr. Weiss's opinion is not supported by the objective medical evidence." R. 416.

At the hearing, Dr. Goldstein testified that Plaintiff suffered from degenerative disc disease in his neck and chronic pulmonary disease during the relevant period. R. 441–50. Dr. Goldstein opined that Plaintiff was limited to a light level of physical activity (which the ALJ clarified as meaning only lifting ten pounds frequently and twenty pounds only occasionally), and that he

4

should "avoid concentrated pulmonary irritants," and not "climb ladders, ropes, or scaffolds." R. 443–44. He stated that Plaintiff could frequently stoop, crouch, and climb stairs. R. 444. When asked by the ALJ to explain why his RFC opinion differed from that of Dr. Weiss, Dr. Goldstein stated that he was "looking at the objective findings of the pulmonary function test, and . . . the range of motion of the neck and the back" and that "Dr. Weiss' notes are kind of sketchy in terms of those things." *Id*. He opined that Plaintiff's treatment with "chronic narcotics" is "one of the things that can make spinal conditions worse over time and actually cause more pain" explaining that the drugs can relieve pain to the degree that sufferers perform activities that in the long term may cause "chronic strain of the muscles in the neck and back." R. 444–45. Dr. Goldstein testified that he did not see evidence in the record supporting Dr. Weiss's conclusion that Plaintiff could only rarely lift five pounds and never lift ten pounds. R. 445. He referred to Plaintiff's testimony regarding babysitting his two-year old grandchild in stating that "obviously, [Plaintiff] was doing it if he had to lift the baby up to change a diaper . . . or move the baby around. That's more than 5 pounds." *Id*. Dr. Goldstein further stated that there was no support in the examination notes for Dr. Weiss's opinion that Plaintiff could only sit or stand and walk for one hour a day or that he would need to lie down for two hours during the workday. R. 445–46.

On cross-examination by Plaintiff's counsel, Dr. Goldstein stated that he was surprised to see the range of motion of Plaintiff's cervical spine was recorded as normal at the consultative examination conducted on June 30, 2013. R. 446. He would have expected to find "some diminished range of motion of the neck", yet nowhere in the record did he see anything limiting his ability to look up or down. R. 447. He opined that while Plaintiff's range of motion was not normal, it "might be closer to normal than somebody who can't move his neck." *Id*. Dr. Goldstein stated that he could not opine as the extent of his neck restrictions without more evidence of Plaintiff's range of motion, but that while "[i]t may be minimal or mild" he did not believe "[i]t would be severe or moderate" based on his review of the record. *Id*. Dr. Goldstein confirmed that the record shows failed back syndrome and stated that "[i]t's contraindicated to use chronic pain medicine for a condition like that." R. 448. Dr. Goldstein explained that while possible that the narcotics could cause an individual to be off task, "people tend to get used to taking narcotics" and he "did not see in this record any examples" of Plaintiff having difficulty concentrating because of his medication. R. 450.

The ALJ gave great weight to Dr. Goldstein's opinion and found "[h]is explanation of the inconsistencies in Dr. Weiss'[s] opinion, citing to the object[ive] medical evidence was very persuasive." R. 417. In summarizing Dr. Goldstein's testimony, the ALJ noted as indicators of credibility his status as a board-certified neurologist, review of the full record and observation of Plaintiff's hearing testimony, and experience with Social Security disability claims. R. 417. Comparing Dr. Goldstein's opinion with Dr. Weiss's opinion, the ALJ concluded that "Dr. Goldstein's opinion [was] well-supported by the objective medical evidence, while Dr. Weiss'[s] opinion [was] not." R. 417.

In addition to Dr. Goldstein's expert opinion, the ALJ also considered the opinions of the state agency medical consultants, Charles Wabner, M.D., and Young-Ja Kim, M.D. In an assessment dated June 13, 2013, Dr. Wabner found that Plaintiff was capable of medium work and could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, and stand and/or walk for six hours in an eight-hour workday. R. 67–76. On reconsideration, Dr. Kim confirmed

5

Dr. Wabner's RFC findings. R. 79–90. While the ALJ also gave significant weight to these state agency medical consultants opinions, she found that Dr. Goldstein's opinion merited more weight than theirs because "he is a specialist in neurology, had the opportunity to review the entire medical record, and thoroughly supported his opinion with citation to the medical record." R. 417.

While the ALJ's decision does not explicitly acknowledge the treating physician rule, any error in failing to do so is harmless because the ALJ followed the spirit of the rule by establishing good reason to not give Dr. Weiss's opinion controlling weight and considering the checklist factors in connection with her determination that his opinion merited little weight. The ALJ acknowledged Dr. Weiss's lengthy treating relationship with Plaintiff, but found his opinion to be inconsistent with his treatment notes and unsupported by the medical record. These findings were supported by Dr. Goldstein's testimony that the medical record did not support Dr. Weiss's opined limitations. Dr. Goldstein provided specific examples to support this conclusion, including that Dr. Weiss's finding that Plaintiff could rarely lift less than five pounds and never lift more than ten pounds was not consistent with Plaintiff's testimony that he was babysitting his two-year grandchild multiple days a week. *See* R. 445. Dr. Goldstein noted that despite lower back pain being one of Plaintiff's major complaints, there was no lumber spine MRI in the record before 2017 and the 2017 lumbar spine MRI showed "[n]o disc herniation or spinal canal stenosis." R. 442. "[I]f the ALJ [made] a reasoned choice between the disparate medical findings," that determination is "beyond our review because of the deference afforded the ALJ's decisions." *Gaylor v. Astrue*, 292 F. App'x 506, 512 (7th Cir. 2008). *See Wilson v. Berryhill*, 737 F. App'x 286, 290 (7th Cir. 2018) (finding that when medical providers disagree, "[a]n ALJ has substantial discretion regarding which doctor to believe" so long as "the ALJ gave suitable reasons for acting within that discretion"). Here, the ALJ found good reason to deny Dr. Weiss's opinion controlling weight and then determined based on the checklist factors that Dr. Goldstein's opinion was more credible. The Court defers to the ALJ's reasoned choice.

Plaintiff concedes that Dr. Weiss's statement that Plaintiff has exhibited the same symptoms for 21 years is "confusing", but contends that the ALJ's other rationales for dismissing Dr. Weiss's opinions are erroneous. [See 37, at p. 14]. This concession is significant, because this finding alone is wholly inconsistent with other evidence in the record, including Plaintiff's work history. Plaintiff specifically takes issue with Dr. Goldstein's failure to note and the ALJ's failure to factor into her analysis that Dr. Weiss observed that Plaintiff's neck pain was becoming less responsive to injections. *See* R. 332.[2] The ALJ discussed these notes elsewhere in her opinion. R. 413. Dr. Goldstein answered the questions he was asked by both the ALJ and Plaintiff's counsel. He explained that his findings were based on his review of the medical records which would have included the treatment notes in question. Just as ALJs are not "required to provide a 'complete written evaluation of every piece of testimony and evidence'" in their decisions, *Wright*, 2021 WL 3832347, at *5 (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)), medical experts

---

[2] Plaintiff also argues that the ALJ erred in relying on Dr. Weiss's treatment notes from 2016 and 2017 after the alleged period of disability in finding that Dr. Weiss's opinion was inconsistent with his own treatment notes, since they came from after the relevant period and the ALJ failed to explain how they were inconsistent with Dr. Weiss's opinion. In doing so, Plaintiff refers to the ALJ's statement that "Dr. Weiss' opinion is also not supported by his own treatment notes, including the new evidence at Exhibit 17F, summarized above." See R. 416. As Exhibit 17F contains all the post-2015 treatment records provided from Dr. Weiss's office, this reference is reasonably read as a statement that this new evidence was also considered, not necessarily that the ALJ gave it equal let alone greater weight than the evidence dating to the relevant period.

cannot be required to provide an exhaustive accounting of the entire medical record in their hearing testimony.

Plaintiff alleges several faults in Dr. Goldstein's testimony, but fails to show that the ALJ erred in giving his expert opinion great weight. For example, while Dr. Goldstein did, as Plaintiff argues, testify that deconditioning could explain some restrictions like those found in Dr. Weiss's opinion, he did not state that he saw evidence in Plaintiff's medical record that deconditioning caused symptoms sufficient to justify those restrictions. Dr. Goldstein testified that while narcotics could lead to deconditioning and that it was possible that taking too many narcotics could cause an individual to be off task or need a nap, he saw no examples in his review of Plaintiff's medical record to support applying these restrictions to the Plaintiff. R. 445–49.

The inconsistencies in Dr. Weiss's opinion—including his assertion that Plaintiff's symptoms have remained the same for 21 years despite his employment within that period — provided good reason for the ALJ to not afford Dr. Weiss's opinion controlling weight. The ALJ then properly considered these inconsistences and other checklist factors in determining that Dr. Weiss's opinion merited little weight. This determination was supported by substantial evidence.

**Subjective Symptoms**

In evaluating Plaintiff's subjective symptom allegations, the ALJ found that "a review of the overall record does not support the extent to which [Plaintiff] alleges he is limited." R. 415. Plaintiff alleges severe back and neck pain. "A claimant's assertions of pain, taken alone, are not conclusive of a disability." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). "To determine the credibility of allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Id*. "As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022).

The ALJ concluded that Plaintiff's "statements about the intensity, persistence and limiting effects of his symptoms" were inconsistent with the evidence in the record, "because the alleged pain severity is not supported by the medical records, including multiple MRIs, EMG and pain management treatment notes." R. 410. For example, in March 2015, Dr. Weiss noted that he "did not detect a clear suggestion as to the etiology of this pain on exam" and ordered an MRI of Plaintiff's cervical spine to compare with his MRI from 2013. R. 366. This MRI showed "mild degenerative changes without focal disc herniation or cord abnormality" without any "acute findings or significant change from 11/27/13." R. 363. Plaintiff does not challenge Defendant's contention that the ALJ's findings are consistent with the objective medical evidence, but argues that a lack of objective medical evidence cannot be the sole rationale for discrediting Plaintiff's testimony. [43, at p. 1]. However, the ALJ's determination regarding the intensity of Plaintiff's symptoms is also supported by other evidence, including the testimony of Dr. Goldstein, the opinions of the state agency medical consultants who found him to be capable of medium work, and the ALJ's assessment of his daily activities. R. 76, 89, 411, 444–46. It is not the Court's role to "substitute its judgment for the ALJ's by reweighing the evidence." *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014).

Plaintiff alleges many errors in the ALJ's discrediting of his symptom allegations. While the allegations are not wholly lacking in merit, "[n]ot all of the ALJ's reasons must be valid as long as enough of them are," and here the alleged flaws in the ALJ's reasoning are simply not enough to undermine the ALJ's determination that Plaintiff's subjective symptom allegations were not credible. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009). The ALJ's decision to not credit the full extent of Plaintiff's alleged symptoms was supported by substantial evidence.

Plaintiff asserts that the ALJ erred in discounting the seriousness of Plaintiff's pulmonary limitations on the grounds that his reported habit of smoking a pack of cigarettes a day was "not consistent with that of a person who believes his disability is from a pulmonary impairment." *See* R. 411. "[C]ourts in this Circuit have found the rejection of a claimant's subjective symptom allegations based on smoking to be erroneous." *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at *10 (N.D. Ill. Oct. 19, 2020) (collecting cases). Defendant contends that the error here is harmless given that the ALJ also cited to descriptions in the medical record of Plaintiff's COPD being stable and controlled, and Plaintiff's lungs being clear on examination. *See* R. 411. While Plaintiff is correct that an individual's condition may be both stable and disabling, the ALJ refers in his decision to provider's notes stating not only that his condition was stable, but "well-controlled on current medications." R. 411 (internal quotations omitted). As the ALJ also relied on the evidence in the record that Plaintiff's COPD was controlled, any error in referencing his smoking was harmless. *See Regina P. v. Saul*, No. 19 CV 3155, 2020 WL 4349888, at *7 (N.D. Ill. July 29, 2020).

Next, Plaintiff takes issue with the ALJ's finding that the daily activities Plaintiff described in his testimony suggested "a greater functional ability than alleged." R. 411. The activities noted by the ALJ include personal care, meal preparation, driving, shopping, household chores, babysitting his grandchildren, and performing minor repairs. *Id*. "[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but [the Seventh Circuit has] urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (finding that the ALJ erred in relying on the care a plaintiff provided to her mother as the "main reason for discounting the evidence of [her] physical limitations" and that the ALJ's reliance on this rationale was "especially troublesome" because most of the tasks performed by plaintiff at her mother's house were sedentary tasks that "differed dramatically from the type of jobs the ALJ believed [the claimant] was capable of performing" (internal quotations omitted)). Here, the ALJ did not equate Plaintiff's daily activities with a full-time job, she found his activities to be inconsistent with his alleged symptoms. *See Bertha M. v. Saul*, 395 F. Supp. 3d 963, 973 (N.D. Ill. 2019) ("[A]n ALJ is free – is supposed to – assess a claimant's statements for consistency."). The ALJ did not err in factoring Plaintiff's activities, including babysitting his grandchildren, into her analysis.

Plaintiff testified at the 2019 hearing that in 2015 he babysat his two-year-old grandchild for four to five hours a day, three to four days per week and other grandchildren on occasions when they were not in school. R. 431.Though Plaintiff's babysitting may have greatly benefitted his family, his situation is not comparable to those cases cited to by Plaintiff in which a custodial parent had to take care of their minor children to retain custody of those children. *Gentle v.*

*Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."); *see also Brown v. Colvin*, 845 F.3d 247, 253-54 (7th Cir. 2016). Nor should it be analogized to the Seventh Circuit's finding in *Stage v. Colvin* that the claimant's need to ensure her two teenage grandchildren "would be supervised before scheduling major surgery shows nothing about the legitimacy of her claim of pain that was disabling and called for a hip replacement." 812 F.3d 1121, 1125 (7th Cir. 2016). In that case, the Court found that in inferring the claimant's care for her grandchildren to be inconsistent with her pain allegations "the ALJ overlooked testimony that [the claimant] performed only very limited tasks—with great difficulty—and that her teenage grandchildren and her sister helped her with most tasks of daily living." *Id*. at 1126. Supervising teenagers and caring for a toddler have very different physical requirements. As Dr. Goldstein identified in his testimony, caring for a two-year old would have required repeated lifting of thirty pounds, a fact inconsistent with Dr. Weiss's opinion that he could never lift more than ten pounds. R. 444−45.

The ALJ also noted Plaintiff's capability to clean and perform minor repairs in her assessment of his daily activities. R. 411. As the ALJ notes elsewhere in her opinion, these tasks were performed outside the home for pay during the relevant period. *See* R. 410. Plaintiff testified that, in 2014, he worked for six months as a temporary part-time maintenance manager for an apartment complex. R. 410, 433. While in this position, he cleaned floors, coordinated with service providers, and completed various odd jobs including some painting and plastering. R. 434. "The ALJ is entitled to consider Plaintiff's part-time work after [his] alleged onset date." *Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *4 (N.D. Ill. May 31, 2019). It was not unreasonable for the ALJ to find Plaintiff's ability to clean and perform minor repairs in the course of his part-time employment to be inconsistent with his allegedly disabling symptoms.

Plaintiff takes issue with the ALJ's assertions that frequent notations that Plaintiff was "in no acute distress" suggested that Plaintiff's pain was not as severe as he alleged. R. 416. While a number of courts have found "a finding of 'no acute distress' [to be] a relevant factor for an ALJ to consider in a symptom evaluation, especially when accompanied by other findings," *John J. v. Kijakazi*, No. 20 CV 50118, 2021 WL 3910750, at *5 (N.D. Ill. Sept. 1, 2021), others have found ALJs to have "read too much into the notations that [a claimant] did not appear to be in acute distress" since the term "refers to a disease, health effect, or symptom having a sudden, abrupt onset and a short, but severe, course, as opposed to a chronic condition or symptom having a slow development and a protracted but mild course." *See Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015). Here given the chronic nature of Plaintiff's alleged pain symptoms, observations that he was not in acute distress were "not a particularly compelling reason to discount [his] statements about the severity of [his] symptoms." *See Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *12 (N.D. Ill. Aug. 11, 2022). Plaintiff additionally contends that Dr. Weiss's suggestion that Plaintiff implant a pain pump supports his allegations of severe pain and that the ALJ erred by inferring that his decline of the offer suggested pain less severe that alleged. Indeed, "an ALJ must not draw inferences about a claimant's lack of treatment without exploring the reasons for the inaction." *Ray v. Berryhill*, 915 F.3d 486, 490–91 (7th Cir. 2019). Here, the ALJ should have considered the concerns Plaintiff expressed about pain pump implantation, including the risk of infection. R. 339. Ultimately, however, the ALJ's decision does not promote either the lack of acute distress or pain pump

9

declination as particularly decisive. Even if she erred in her evaluation of these two pieces of evidence, her other reasons for discounting Plaintiff's symptom allegations are sufficient. *See Michelle M. L.*, 2022 WL 3297619, at *12.

The ALJ speculated that Plaintiff's "impairments may not be the sole reason for his inability to sustain full-time competitive employment," because the accident which led to the back pain occurred in 1991, Plaintiff earned significant wages since that time with his impairments at approximately the same level of severity, and his earnings decreased in the years immediately preceding the period for which he is claiming disability. R. 412. Plaintiff argues that this analysis constituted a character assessment prohibited by SSR 16-3p. Defendant contends that this assessment was not of character, but of Plaintiff's prior work record and efforts to work pursuant to SSR 16-3p. While the ALJ's assessment based on his work history may appear to cast aspersions on his character, interpreting SSR 16-3p as prohibiting any analysis which implies a claimant was less than forthright in alleging disabling symptoms would effectively compel ALJs to accept all symptom allegations. As the ALJ rooted her suggestion in her analysis of Plaintiff's work history, the Court does not find that this paragraph crossed the line into an impermissible character assessment.

The Court's role is not to re-do the ALJ's analysis, but to determine if her determination was supported by substantial evidence. Here, the ALJ's determination that Plaintiff's subjective symptom allegations were only partially reliable was supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [37] is denied and the Commissioner's motion for summary judgment [42] is granted.

Date: 07/26/2023                           ENTER:

_Margaret J. Schneider_
United States Magistrate Judge